# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CHARLES CURTIS WILLIAMS,       :
AIS 203899,

                                     :

        Petitioner,

                                       :

vs.                                         CA 07-0682-CG-C

                                       :

TONY PATERSON, et al.,

                                       :

        Respondents.

## REPORT AND RECOMMENDATION

       Charles Curtis Williams, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his March 9, 2006 felony DUI and driving with a suspended license convictions in the Circuit Court of Baldwin County, Alabama. Petitioner received a ten-year sentence and a $10,100 fine on the DUI conviction on May 25, 2006, and a $500.00 with respect to the charge of driving with a suspended license. Petitioner's convictions and sentences were affirmed by the Alabama Court of Criminal Appeals on December 15, 2006. Williams' application for rehearing was overruled by the Alabama Court of Criminal Appeals on January 12, 2007

and the Alabama Supreme Court denied his petition for writ of certiorari on June 15, 2007.

In his petition before this Court, petitioner raises the following grounds which he claims entitle him to relief:

(1)    denial of effective assistance of trial counsel;

(2)    illegal evidence was used against him and a legal charge was not made;

(3)    the indictment is unconstitutional because it failed to charge any of the four distinctive parts of the statute; and

(4)    he was deprived of his constitutional right to a fair trial because of prejudicial comments made by the prosecution, police and the judge, etc. According to Williams, he raised these four claims on his direct appeal. (Doc. 1, at 7-9)

The respondent has effectively admitted that petitioner has exhausted his state court remedies but does claim that this Court is procedurally barred from reaching the merits of Williams' claims, or alternatively, that same are without merit. (*See* Doc. 12).  This case is ripe for a decision by this Court.

This cause is before the Court on the petition, respondent's answer, with attachments, and petitioner's rebuttal. A careful review of the record has

been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

### FINDINGS OF FACT

1.     The May, 2005 session of the Baldwin County Grand Jury charged petitioner, in a two-count indictment, as follows:

> [he] did drive or [was] in actual physical control of a vehicle while,
>
> (1) there was 0.08 percent or more by weight of alcohol in his blood; or
>
> (2) under the influence of alcohol; or
>
> (3) under the influence of a controlled substance to a degree which rendered him incapable of safely driving; or
>
> (4) under the combined influence of alcohol and a controlled substance to a degree which rendered him incapable of safely driving;
>
> in violation of §32-5A-191(a) of the Code of Alabama and §32-5A-191(h) of the Code of Alabama, in that he has been convicted of three or more offenses of Driving Under the Influence,
>
> .     .     .
>
> [he] did operate a motor vehicle upon the public roads or highways of Baldwin County, Alabama while his license or privilege to operate such vehicle was revoked or suspended, in violation of § 32-6-19 of the Code of Alabama[.]

3

(Doc. 12, Exhibit A, INDICTMENT)

2.      Shane Leiser and Brett Murray, officers with the Fairhope Police
Department, testified that on March 31, 2005, they responded to a call of an
individual passed out behind the wheel of a car on Morphee Avenue in
Fairhope, Alabama. (*See* Doc. 12, Exhibit A, T.T. 43-44 & 61-62) When
Williams failed to respond to a knock on the driver's side window, Officer
Leiser opened the car door to secure the car so that it would not move. (*Id*. at
45) Leiser reached across petitioner to perform this task (*id*. at 59) and then
shook Williams' shoulder for about thirty (30) seconds before he was able to
rouse petitioner (*id*. at 45-46). Upon opening the door, Leiser detected a strong
odor of alcohol emanating from the vehicle and Williams appeared highly
intoxicated to the officer. (*Id*. at 46; *see also id*. at 49 ("In this case, he had a
strong odor of an alcoholic beverage and he showed the same symptoms of
being intoxicated of normal drivers that we deal with.")) When petitioner
exited the vehicle, at Leiser's request, he was staggering and could not stand
up; the officers had to physically hold him up to keep him from falling to the
ground. (*Id*. at 46; *see id*. at 66 ("Well, he didn't exit without our assistance.
We had to kind of help him. It was almost like he was weak. We helped him

4

stand and when he did stand, we were gonna let him go to stand on his own and his balance was terrible. He leaned up against the vehicle, leaned towards me, leaned towards Officer Leiser. We kind of had to balance him for himself because he wasn't able to keep his knees from buckling because of, in my opinion, his inebriation."))

3.      Officer Murray offered testimony regarding what officers look for in determining whether a driver is under the influence of alcohol or drugs, as well as his specific observations of Williams on March 31, 2005. (*See* T.T. 67-70)

> Q.      Did you get a good look at him? Was there anything other . . . than . . . smell, were there any other cues of impairment, so to speak, things that you're trained to pick up on[,] were you able to pick up on?
>
> A.      Yes. There are several things we are trained to look for. One of the things is typically you look in the person's face and you look at their eyes and you look for eyes being bloodshot, you look for the eyes being watery, their face being droopy. They have a staggered look on their face. They look confused. They aren't alert. Their motor skills are poor. If you ask them to reach for their driver's license, they fumble with something, it seems like, for minutes. A simple task they can't complete. And you look at their stance and then you give them simple instructions in our training: Sir, could you do this for me? Could you do that for me? And they're simple things and if they're unable to perform those things, those are things you take into account as [to] their sobriety.
>
> Q.      You mentioned a number of things. Did all of those

5

things apply to Mr. Williams that night?

A.      Yes. I observed bloodshot, watery eyes, droopy face. I heard slurred speech. I observed poor stance, poor balance, poor motor skills. I smelled an odor of alcoholic beverage emitting from his mouth. And the -- just the being unconscious alone was a big sign and the smell of alcohol that he was definitely under the influence.

Q.      As further part of a DUI investigation, do you typically administer what are commonly referred to as the field sobriety tests?

A.      Yes.

Q.      What typical tests do you administer as part of your investigation?

A.      The test standardized and practice[d] for years, I first start with an eye test, horizontal gaze nystagmus which detects eye movement and so forth. And then we go into the line that probably all of you have seen on TV where you walk down the line, take nine steps and walk nine steps back and we look for balance, if he's able to follow instructions, stepping off the line, and there's several things we look at there.

Then we also use a one leg stand where we have the person stand there and hold one foot off the ground at about six inches high and they count out loud while we're having them hold their foot up and that also -- we look for swaying and balance and putting your feet down and counting and so forth. And these test basic motor skills in a person and that's what I, typically, do.

Q.      Considering that's part of your typical investigative practice, were you able to get Mr. Williams to perform any of those [tests]?

6

A.     No. I could not do any tests.

Q.     And did you attempt to?

A.     I couldn't even attempt to. He could hardly stand on his own.

Q.     How long did y'all have him out of the car in trying this?

A.     Well, it didn't take long to realize he could not stand without our assistance and so, you know, I can't give you -- maybe under a minute. I'm not sure. Two minutes. It's hard to know but it doesn't take long to figure out he's not able to stand.

Q.     At that point, did y'all decide or [did] you make the decision to place him under arrest?

A.     Yes.

Q.     And . . . what was that decision based on?

A.     Based on my training and experience as a police officer in dealing with the countless people under the influence of alcohol in my career and training. I did form the opinion Mr. Williams was definitely driving under the influence of alcohol and impaired and unable to safely operate a motor vehicle. And I based that on the symptoms that I've described to you, the lack of me being able to conduct a field sobriety test on him because of his state told me alone that he was beyond anybody who needed to be in a vehicle.

(*Id*.) Williams refused to take the Draeger breathalyzer test. (T.T. 80-82)

4.     When petitioner was arrested, Officer Murray found him in

possession of both an Alabama driver's license and a Georgia driver's license.

(*See* T.T. 74) Murray testified that he checked the status of the Alabama

7

driver's license "and it came back suspended[.]" (*Id.*) Murray ordered a

certified driving history on Williams from the State of Alabama. (*Id.* at 74-75)

> That's a copy of the certified record that the state sends us. . . .
> And this says that Mr. Charles Curtis Williams, his driver's
> license number and description and so forth, when his license
> was issued, and it says the status of his license. . . . It says,
> subject's driving license and/or driving privilege was suspended
> on that date, date of arrest, **which means it was suspended
> prior to that**."

(*Id.* at 77 (emphasis supplied)) State's Exhibit 2 depicts Williams' driver

history abstract as of April 15, 2005, and reveals, on its face, that petitioner's

driver's license and/or driving privilege was suspended as of March 31, 2005.

(Doc. 12, Exhibit A, Trial Transcript, State's Exhibit 2)

     5.    Petitioner was convicted of driving with a suspended license and

felony DUI in the Circuit Court of Baldwin County, Alabama on March 9,

2006. (Doc. 1, at 2; *see also* Doc. 12, Respondent's Exhibit A, Case Action

Summary Sheet) He was sentenced to ten years imprisonment on the felony

DUI charge on May 25, 2006 and received a $500 fine on the charge of driving

with a suspended license. (Doc. 12, Respondent's Exhibit B, Tr. 6) Petitioner,

through his attorney, immediately entered oral notice of appeal. (*Id.*)

     6.    Williams' appointed counsel on appeal, Leonard Mikul, Esquire,

filed a no-merit brief and a motion to withdraw pursuant to *Anders v.*

*California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). (Doc. 12, Exhibit D; *see also* Doc. 12, Exhibit C (no-merit brief)) The Alabama Court of Criminal Appeals advised Williams, on October 25, 2006, that his attorney had filed a no-merit brief and allowed him a period of time up to and including November 15, 2006 to serve it "with a list of each and every point or issue the appellant wants considered in this appeal." (Doc. 12, Exhibit D). Williams filed his set of *pro se* issues on October 30, 2006. (Doc. 12, Exhibit E)

      7.    The Alabama Court of Criminal Appeals affirmed Williams' convictions and sentences by memorandum opinion entered on December 15, 2006. (Doc. 12, Exhibit F)

      Williams's appointed counsel, Leonard F. Mikul, has filed a brief in substantial compliance with Anders v. California, 386 U.S. 738 (1967). Counsel stated that his review of the record found no viable appellate issues to present to this Court. Counsel then discussed several issues that he had considered as potential issues: (1) whether the trial court erred in denying Williams's motion for a mistrial based on Officer Brett Murray's comment to the effect that Williams's driving history had "several more pages"; (2) whether the State presented sufficient evidence to establish a prima facie case of felony DUI and a prima facie case of driving with a suspended or revoked license; and (3) whether Williams was "properly sentenced under the law." Ultimately, counsel determined, none of these issues were viable.

      This Court issued an Anders order on October 20, 2006. In response, Williams filed a list of pro se issues with this Court in which he raised the following claims: (1) whether Williams

could be convicted of driving with a suspended or revoked Alabama driver's license if he possessed a valid driver's license issued by the State of Georgia; (2) whether the indictment returned against Williams validly charged him with felony DUI and driving with a suspended or revoked driver's license; (3) whether the trial court correctly instructed the jury as to the effect of Williams's refusal to submit to a breath-alcohol test; (4) whether the certificate of analysis concerning Williams's breath-alcohol test was admissible into evidence; (5) whether the State presented sufficient evidence to sustain a conviction for felony DUI -- specifically, whether the State established by legal evidence, proof of three prior DUI convictions; (6) whether the sentence imposed by the trial court was legal; (7) whether Williams's right to a fair trial was prejudiced because the State's witnesses were allowed to remain in the courtroom during each other's testimony; and (8) whether Williams's trial counsel rendered ineffective assistance of counsel.

Williams contends that he was improperly convicted of driving with a suspended or revoked driver's license because, he claims, in addition to his Alabama driver's license, he was also in possession of a valid driver's license issued by the State of Georgia. We note, however, that this issue was not properly preserved for appellate review. The record indicates that while attempting to obtain information regarding Williams's name, address, and other information necessary to complete an arrest report, Fairhope police officer Brett Murray discovered that Williams possessed two purportedly valid driver's licenses -- one issued by the State of Alabama in 2002, which expired in 2006; and one issued by the State of Georgia in 2004, which expired in 2008. Knowing that an individual could not legally possess valid driver's licenses from two states at the same time, Officer Murray decided to investigate the validity of Williams's Alabama license. Officer Murray discovered that Williams's Alabama license had been suspended. Following that discovery, Officer Murray charged Williams with driving while his driver's license had been suspended or revoked. After the State rested its case, Williams moved for a judgment of acquittal based on the

State's failure to prove a prima facie case as to both charges. The trial court denied Williams's motion. Williams then rested his case, without offering any evidence.

A defendant who states specific grounds in his motion for a judgment of acquittal waives all other grounds not specified. A motion for judgment of acquittal premised on the State's failure to prove a prima facie case is sufficient to preserve the question of whether the State established each element of the charged offense. Section 32-6-19(a)(1), Ala.Code 1975, provides, in pertinent part:

> Any person whose driver's or chauffeur's license issued in this or another state or whose driving privilege as a nonresident has been cancelled, denied, suspended, or revoked . . . and who drives any motor vehicle upon the highways of this state while his or her license or privilege is cancelled, denied, suspended, or revoked shall be guilty of a misdemeanor . . . .

Here, the State established that Williams -- a resident of Baldwin County with a Baldwin County address -- was driving a vehicle in Baldwin County after his Alabama driver's license had been suspended or revoked, thus establishing a prima facie case against him. However, Williams now seeks to challenge his conviction by presenting to this Court evidence of an affirmative defense -- evidence that was not presented to the trial court. Because this evidence was not presented to the trial court and because Williams's motion for acquittal was not premised on his possession of what he alleged to be a validly-issued driver's license from the State of Georgia, this claim has not been preserved for appellate review.

Williams next challenges the validity of the indictment returned against him. Specifically, Williams claims that the indictment was void because it failed to set out each material element of the charged crimes and because it was based on

"illicit information." This Court has held that an indictment that tracks the language of the statute is sufficient if the statute prescribes with definiteness the essential elements of the offense. Here, the indictment tracked the language of §§ 32-5A-191 and 32-6-19, the offenses for which Williams was indicted. Moreover, contrary to Williams's claim, it was not necessary for the indictment to state the time and place of the alleged offense, nor was the indictment based on "illicit information." Consequently, it was not void. Thus, his claim that the trial court lacked jurisdiction to render judgment or impose sentence must fail.

Williams next contends that the trial court erroneously instructed the jury on the legal effect of his refusal to submit to a breath-alcohol test. In a related claim, Williams contends that the "certificate of breath alcohol analysis" establishing that he refused to submit to the test was improperly admitted into evidence. We have examined the pertinent instruction. Contrary to Williams's contention, the trial court's instruction regarding Williams['] refusal to submit to testing was a correct statement of law. Moreover, evidence that Williams refused to submit to the breath-alcohol test was properly admitted. No basis for reversal exists as to these claims.

Williams next challenges the legality of the sentence imposed by the trial court. Specifically, Williams claims that the court lacked jurisdiction to impose a sentence because one of the previous DUI convictions did not contain a certification or establish that he was represented by counsel at the time of his conviction, and that his sentence exceeds the maximum allowed by law. All of these claims are without merit. At the sentenc[ing] hearing, the State presented evidence of four previous DUI convictions -- three convictions for misdemeanor DUI and one conviction for felony DUI. Williams's defense counsel objected to one of the convictions on the grounds that the conviction had not been properly certified and because there was no evidence that Williams had been represented by counsel. The trial court advised Williams that it would not consider that

conviction for purposes of imposing sentence. However, the court stated, because the remaining three convictions were properly certified, Williams could still be convicted and sentenced for felony DUI. The trial court was correct. Williams also claims that his sentence was illegal because it exceeded the maximum allowed by law. Section 32-5A-191(h) provides that a person convicted of felony DUI "shall be guilty of a Class C felony and punished by a fine of not less than four thousand one hundred dollars ($4,100) nor more than ten thousand one hundred dollars ($10,100) and by imprisonment of not less than one year and one day nor more than 10 years." Although the trial court imposed the maximum fine and sentence against Williams, it was nevertheless within the range allowed by law. No basis for reversal exists as to these claims.

Williams next contends that his right to a fair trial was prejudiced "because the State allowed every witness to stay in court and listen to what each other said." We are unable to determine from the record whether this claim is, in fact, true. We note, however, that nothing in the record indicates that "the rule" was invoked by either party or, if invoked and then violated by State[] witnesses, that defense counsel objected to said violation. This Court will not predicate error on a silent record.

Williams's final contention is that his trial counsel rendered ineffective assistance. This claim is raised for the first time on appeal. As we stated in Willingham v. State, 796 So.2d 440, 445 (Ala.Crim.App. 2001):

> [A]n ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly preserved for review upon direct appeal.

Because Williams did not present this claim to the trial court in

13

a motion for new trial, nothing is preserved for this Court's review.

Based on the foregoing, the judgment of the trial court is affirmed.

(*Id.* (most internal quotation marks and citations omitted)) The Alabama Court of Criminal Appeals denied Williams' application for rehearing (Doc. 12, Exhibit G) and the Alabama Supreme Court denied his petition for writ of certiorari (Doc. 12, Exhibit H) on June 15, 2007 (Doc. 12, Exhibit I).

## CONCLUSIONS OF LAW

A.    **Procedural Default Doctrine**.

1.    In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id.* at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53

14

L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

2.      The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

3.      An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.  (citations omitted)   This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .      .      .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)   In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.    The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas

cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4.     In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal

habeas proceeding.").    Moreover, the presumption "looks through"
unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501
U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state
> judgment rejecting a federal claim, later
> unexplained orders upholding that judgment or
> rejecting the same claim rest upon the same
> ground.  If an earlier opinion "fairly appear[s] to
> rest primarily upon federal law," *Coleman*, 501
> U.S., at 740, 111 S.Ct., at 2559, we will presume
> that no procedural default has been invoked by a
> subsequent unexplained order that leaves the
> judgment or its consequences in place.  Similarly
> where . . . the last reasoned opinion on the claim
> explicitly imposes a procedural default, we will
> presume that a later decision rejecting the claim
> did not silently disregard that bar and consider the
> merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption may not be applied
in cases in which the state court opinion did not, at a minimum, discuss the
federal grounds at issue."  *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993)
("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the
state court issued an opinion, it would have ignored its own procedural rules
and reached the merits of this case. In fact, the most reasonable assumption is
that had the state court ruled, it would have enforced the procedural bar.").
Finally, "where a state court has ruled in the alternative, addressing both the

independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5.     When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted). Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted).  In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted).  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted).  Once the

petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

6.      In his answer, respondent asserts that all of Williams' claims are procedurally defaulted or otherwise lack merit. In particular, respondent contends that petitioner's ineffective assistance of trial counsel and indictment claims are procedurally defaulted and that the other two claims are procedurally defaulted or, alternatively, have no merit. Certainly, the Alabama Court of Criminal Appeals determined that Williams' ineffective assistance of trial counsel claim was defaulted because of his failure to raise that claim in a motion for new trial. (Doc. 12, Exhibit F, at 6 ("Because Williams did not present this claim to the trial court in a motion for new trial, nothing is preserved for this Court's review.")) As to the indictment claim, it is

20

respondent's position that Williams did not couch his indictment attack in constitutional language on appeal to the Alabama Court of Criminal Appeals and, therefore, he has failed to exhaust this claim. In addition, it is the respondent's contention that Williams did not argue to the Alabama Court of Criminal Appeals that his trial was unfair because of prejudicial comments made by those involved in his trial; instead, he only argued that his trial was unfair because all of the State's witnesses stayed in the courtroom and heard each other's testimony. Finally, the respondent contends that petitioner's "illegal evidence"/"legal charge" claim is defaulted for the reason found by the Alabama Court of Criminal Appeals, that is, because it was not properly preserved for appellate review.

7.      It is clear to the undersigned that Willams has procedurally defaulted his ineffective assistance of trial counsel claim,[1]  his unfair trial

---

[1]      *See Ex parte Ingram*, 675 So.2d 863, 865-866 (Ala. 1996) ("[I]n any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly preserved for review upon direct appeal. When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala.R.Crim.P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala.R.Crim.P., petition for post-conviction relief."); *cf. Boyd v. State*, 913 So.2d 1113 (Ala.Crim.App. 2003) (ineffective assistance of trial counsel claims raised on direct appeal).

claim,[2] and his "illegal evidence"/"legal charge" claim for the reasons previously identified. However, the undersigned believes the respondent is overreaching in arguing that petitioner has procedurally defaulted his indictment claim on the basis that he did not "submit the claim as a federal claim alleging a constitutional violation or [violation of] other federal law." (Doc. 12, at 12) The undersigned recommends that this Court find that the petitioner, who presented his indictment claim to the Alabama Court of Criminal Appeals *pro se*, has not defaulted this claim based upon the respondent's parsing of the language used by Williams on appeal.[3]

---

[2]    In particular, it is clear that "[a] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Henderson v. Campbell*, 353 F.3d 880, 898-899 (11th Cir. 2003), *cert. denied*, 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 14 (2004). In this instance, Williams did not frame his "unfair trial" argument in state court the way that he frames it in this Court; therefore, he has not exhausted this claim, as framed to this Court. Obviously, Williams can no longer raise this issue on direct appeal. In addition, he cannot raise this claim in a Rule 32 petition because the state courts would find it procedurally barred on the basis that it is an issue that could have been, but was not, raised at trial or on appeal. *See* Ala.R.Crim.P. 32.2(a)(3) & (5) (claims are precluded if they could have been, but were not, raised at trial or on appeal).

[3]    It is the undersigned's understanding, from a review of the habeas petition and Williams' response to the answer, that petitioner is not only challenging the legality of his conviction for driving while his license was suspended on the basis that he had a valid Georgia driver's license but, in addition, appears to be challenging the validity of that conviction on the basis that his license was suspended on the very day he was arrested for the underlying offense of felony DUI, that is, March 31, 2005, and, therefore, it was impossible for him to be driving with a suspended license since his suspension was based on the felony DUI conduct occurring the same day. Respondent does not argue that this Court is procedurally defaulted from considering the merits of this issue, as properly framed above, on the basis that petitioner never

8.      Turning to the issue of cause and prejudice, in replying to the answer of the respondent petitioner nowhere sets forth a cause and prejudice argument for his procedural default of the foregoing issues; therefore, it is found that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995); *Tower v. Phillips*, *supra*, 7 F.3d at 211 (court addressed only the single cause argument proffered by the petitioner).[4]

---

presented same to the state courts of Alabama. Accordingly, the undersigned considers the merits of the issue as properly framed.

[4]      Even if this Court was to assume that cause exists for the default of petitioner's ineffective assistance of trial counsel claim, unfair trial claim, and "illegal evidence"/"legal charge" claim, petitioner would not be entitled to a merits-review of these claims by this Court because he cannot establish prejudice.

Initially, Williams has not shown that trial counsel's performance fell below an objective standard of reasonableness. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exits that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In this case, Williams makes the conclusory and bald assertion in his complaint that "[t]he record in this case speaks for itself" regarding his claim of ineffective assistance of counsel. Petitioner expounds upon his claim only briefly, claiming that his trial attorney acted as a friend of the court. However, the undersigned has read the entire record in this case and finds

that petitioner's attorney acted as an advocate for her client, objecting on a number of occasions to various evidence and moving for judgment of acquittal on both counts. Accordingly, the undersigned finds that Williams has not established that his trial attorney's representation fell below "an objective standard of reasonableness."

In addition, nothing in the record supports petitioner's conclusory argument that he was deprived of a fair trial because of prejudicial comments made by the prosecution, police and the judge, etc. (*See* Doc. 1, at 9) Petitioner has not established that he was prejudiced in any manner because of these comments.

Finally, Williams cannot establish that he has been prejudiced by the failure of courts to consider the merits of his "illegal evidence"/"legal charge" claim since he is not in custody on this charge, having only been fined for driving while his license was suspended. *See Bilal v. Hadi*, 2006 WL 3201324, *4 (N.D. Fla. 2006) ("A district court's jurisdiction to grant a writ of habeas corpus is limited: '[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution . . . .' 28 U.S.C. § 2254(a). The Supreme Court has interpreted this statutory language to require, 'that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490-91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) . . . . In *Maleng*, the Supreme Court held that 'a habeas petitioner [is not] "in custody" under a conviction when the sentence imposed for that conviction has *fully expired* at the time the petition is filed.' Moreover, the Court announced, a habeas petitioner does not remain in custody after a sentence has fully expired merely because the prior conviction will be used to enhance a sentence imposed for subsequent crimes for which petitioner may be convicted. In the instant case, neither party asserts that any sentence or term of probation was imposed as a result of petitioner's plea. Although in Florida second degree misdemeanors carry a maximum sentence of 60 days, there is nothing in the record indicating that a jail term was imposed. Further, although Florida law provides that adjudication of guilt may be withheld only if the defendant is placed on probation, nothing in the record indicates petitioner received a term of probation. Based on the record before this court, and the lack of any allegations or evidence suggesting that petitioner received a jail sentence, probation or any other restraint on his liberty as a result of his no contest plea, the court must conclude that upon entry of his plea on May 6, 1996, petitioner was no longer 'in custody' on the harassing telephone call charge. He was therefore not 'in custody' on that misdemeanor at the time he filed the instant petition."); *Bunton v. Director, TDCJ-CID*, 2006 WL 2524084, *2 (E.D. Tex. 2006) ("Title 28 U.S.C. § 2254 allows a district court to 'entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' A district court has subject-matter jurisdiction over the petition only if the petitioner is 'in custody' under the judgment under attack at the time the

9.     The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Williams to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the

_____

petition is filed. The custody requirement is not satisfied if the sentence imposed as a result of the conviction under attack has fully expired when the petition was filed. . . . The sentence imposed as a result of petitioner's misdemeanor conviction has expired. As a result, for the reasons set forth above, the court lacks subject-matter jurisdiction over petitioner's challenge to his misdemeanor conviction.").

light of the new evidence."). Williams has not come forward with any new reliable evidence which establishes his actual innocence and thereby undermines his felony DUI conviction, the only conviction which form the basis of his present incarceration.[5] Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

### B.   Merits Discussion of Indictment Claim.

10.     Williams filed his petition for writ of habeas corpus relief in this Court on or about September 23, 2007, and therefore, his case is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001). As amended, § 2254 now provides:

---

[5]     Petitioner is not actually "in custody" on the charge of driving while his license was suspended; a simple fine was imposed. *See* footnote 4, *supra*. In addition, Williams has not come forward with any new reliable evidence, not presented at trial, which establishes his innocence of that charge; instead, petitioner is simply making a new legal argument about the sufficiency of the evidence presented at his trial. Accordingly, he is not entitled to relief based upon a claim of actual innocence.

Even assuming petitioner's actual innocence of this charge, Williams still cannot establish his entitlement to habeas corpus relief because, as aforesaid, he is not "in custody" on this charge and there is nothing in the record which reflects that he has suffered any adverse collateral consequences because of the fine he received as a result of his conviction of driving while his license was suspended.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[6]

28 U.S.C. § 2254(d)(1) & (2) (footnote added).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

11.   In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to

---

[6]      Based upon the facts as found by the Alabama Court of Criminal Appeals in its decision, it is clear that no argument can be made that the decision of the Alabama Court of Criminal Appeals was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts.  More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama Court of Criminal Appeals, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The appellate court's findings are based upon what a reasonable jury could have found the evidence to be.

grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to

a new context where it should apply.'").

12.    In this case, the Alabama Court of Criminal Appeals reached the merits of petitioner's unconstitutional indictment claim. Williams cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to this issue. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama Court of Criminal Appeals, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, as indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama Court of Criminal Appeals, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.

13.    In this case, the Alabama Court of Criminal Appeals rejected Williams' contention that the indictment was void due to its alleged failure to set out each material element of the charged crimes, finding that the indictment tracked the language of the statutes and, therefore, was not void. (Doc. 12, Exhibit F, at 4; *see also id*. ("This Court has held that an indictment that tracks

the language of the statute is sufficient if the statute prescribes with definiteness the essential elements of the offense.")) It is clear that "[a]n accused has a constitutional right to an indictment which puts him on notice of the case the prosecution will present at trial." *Thompson v. Nagle*, 118 F.3d 1442 (11th Cir. 1997) (citing *Kotteakos vs. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Peel*, 837 F.2d 975, 976-77 (11th Cir. 1988); *Ex parte Washington*, 448 So.2d 404, 408 (Ala. 1984)), *cert. denied*, 522 U.S. 1125, 118 S.Ct. 1071, 140 L.Ed.2d 130 (1998). While the Alabama Court of Criminal Appeals did not mention *Thompson v. Nagle*, or any comparable case, in its analysis of Williams' attack on the indictment, recognition by the appellate court of the proper analysis is clear from a reading of that decision. *Cf. Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) ("Avoiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

14.    Petitioner contends that the indictment is unconstitutional because it "failed on its face to charge any of the 4 distinctive parts of the statute."(Doc. 1, at 8) While it is true that the indictment charged, in the

30

alternative, four different parts of the statute (*see* Doc. 12, Exhibit A, INDICTMENT), this does not make the indictment invalid under Alabama law, *Tompkins v. State*, 898 So.2d 875, 877 (Ala.Crim.App. 2004) ("The fact that an indictment does not specify which statutory alternative is available does not render the indictment fatally defective. . . . An indictment[] that tracks the language of the statute prescribes with definiteness the essential elements of the offense."), nor did same fail to place Williams on notice of the case the prosecution would present at trial, *Thompson, supra*.[7]

15.    In light of the foregoing, the undersigned finds that the decision of the Alabama Court of Criminal Appeals, as it relates to petitioner's indictment argument, did not arrive at any conclusion opposite to those reached by the Supreme Court of the United States on any question of law nor did it unreasonably apply governing Supreme Court precedent to the facts of the case.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief should be

---

[7]    More specifically, the undersigned finds that the indictment in this case put Williams on notice that he was going to have to defend against evidence establishing that he was driving or was in actual physical control of a vehicle while he was under the influence of alcohol.

denied.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of March, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE